IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RYAN CHARLES KIRKPATRICK,** **IDOC # K83724,** | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CIVIL NO. 11-1013-GPM ) |
| **YOLANDE JOHNSON, et al.,** | ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

      Plaintiff Ryan Charles Kirkpatrick, a prisoner in the custody of the Illinois Department of Corrections ("IDOC") who currently is incarcerated in the closed maximum security prison at the Tamms Correctional Center ("Tamms C-Max" or "Tamms supermax"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights by persons acting under color of state law. This case is before the Court for screening pursuant to 28 U.S.C. § 1915A, which provides, in relevant part:

>   (a) Screening. – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>   (b) Grounds for dismissal. – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>   (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which

relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Though the Court must accept a plaintiff's factual allegations as true, "some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Also, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. The factual allegations of a pro se complaint must be liberally construed. *See Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

In Kirkpatrick's pro se complaint, Kirkpatrick alleges that his confinement in segregation at Tamms C-Max constitutes cruel and unusual punishment, in violation of the Eighth Amendment, and asks that the Court order him to be transferred to the Psychiatric Unit at the Dixon Correctional Center ("Dixon"). Named as Defendants are Yolande Johnson, the former warden of Tamms C-Max, and S.A. Godinez, the current director of IDOC. This Court has acknowledged that conditions of confinement at Tamms C-Max are such as to give prisoners in IDOC custody a due process liberty interest in avoiding transfer to Tamms supermax without a hearing. *See generally Westefer v. Snyder*, 725 F. Supp. 2d 735 (S.D. Ill. 2010). However, the Court has never held, and is unaware of any authority holding, that confinement in a supermax prison is ipso facto cruel and unusual punishment. The Eighth Amendment protects prisoners from cruel and unusual punishment. *See Robinson v. California*, 370 U.S. 660, 666 (1962). There is no static test

by which a court can determine whether conditions of confinement violate the Eighth Amendment and instead a court must examine the totality of the conditions of confinement. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). A prisoner is not entitled to "the amenities, conveniences and services of a good hotel[.]" *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988). Thus, unpleasant inconvenience does not rise to the level of an Eighth Amendment violation; instead a prison official's "act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes*, 452 U.S. at 347). *See also Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994) (the Eighth Amendment protects prisoners from conditions that "exceed[ ] contemporary bounds of decency of a mature, civilized society"). In sum, the Eighth Amendment requires prison officials to maintain minimal sanitary and safe prison conditions, as well as to provide minimal exercise, showers, clothing, and sanitary eating conditions. *See DeMallory v. Cullen*, 855 F.2d 442, 445 (7th Cir. 1988); *Wells v. Franzen*, 777 F.2d 1258, 1264 (7th Cir. 1985).

With respect to the penological justification for supermax prisons, in *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Court explained that "[t]he use of Supermax prisons has increased over the last 20 years, in part as a response to the rise in prison gangs and prison violence. About 30 States now operate Supermax prisons, in addition to the two somewhat comparable facilities operated by the Federal Government." *Id*. at 213 (citation omitted). The *Wilkinson* Court went on to say,

> Prison security, imperiled by the brutal reality of prison gangs, provides the backdrop of the State's interest [in maintaining supermax prisons]. Clandestine, organized, fueled by race-based hostility, and committed to fear and violence as a means of disciplining their own members and their rivals, gangs seek nothing less than to control prison life and to extend their power outside prison walls. Murder of an inmate, a guard, or one of their family members on the outside is a common form of gang discipline and control, as well as a condition for membership in some gangs.

> Testifying against, or otherwise informing on, gang activities can invite one's own death sentence. It is worth noting in this regard that for prison gang members serving life sentences, some without the possibility of parole, the deterrent effects of ordinary criminal punishment may be substantially diminished.

*Id*. at 227 (citations omitted). Concerning Tamms C-Max, the United States Court of Appeals for the Seventh Circuit has explained that "Tamms is the highest security prison in Illinois. IDOC designed the conditions there to be harsh, so that the threat of being transferred to Tamms would deter prisoners throughout the system from disobeying prison rules." *Westefer v. Snyder*, 422 F.3d 570, 573 (7th Cir. 2005). In determining that IDOC prisoners have a liberty interest in avoiding transfer to Tamms C-Max, this Court concluded, based on, inter alia, the testimony of IDOC's then-director Michael Randle, that Tamms supermax has accomplished its unique, albeit unpleasant, purpose in the IDOC system:

> It is undisputed among the parties to this case that the supermax prison at Tamms is the highest security prison in Illinois, featuring uniquely restrictive conditions of confinement designed both to control the most high-security inmates in the IDOC system and to encourage inmates at lower-security prisons to comply with IDOC rules to avoid being transferred to the supermax prison. Consistent with the unique role that the supermax prison at Tamms is meant to play in the IDOC system, the prison was never intended to be full and has been approximately half-full since its opening in 1998. IDOC Director Randle testified that it is "a good thing" that Tamms operates at about half capacity "because it shows that our staff and inmates, for the most part, are doing the right things and our prisons are safe. If Tamms were full, I would be concerned about the 27 other prisons in the IDOC system because it would indicate that there is some bad things happening out there." It appears that Tamms has succeeded in its purpose. According to IDOC Director Randle, "incidents of inmate-on-inmate assaults, inmate-on-staff assaults, gang related activities, the number of lock down days, all of those indicators that we look at in terms of providing a safe environment in the other 27 prisons have all gone down and that directly correlated with the opening and operation of Tamms." It is equally apparent to the Court from the testimony it heard from IDOC inmates, including present and past inmates of Tamms, that the inmates genuinely fear the supermax prison and do not want to be confined there.

*Westefer*, 725 F. Supp. 2d at 745 (citations and brackets omitted).

In his complaint Kirkpatrick does not allege that he has been deprived of the minimal civilized measure of life's necessities at Tamms C-Max and, as the Court is well aware from presiding over the protracted *Westefer* litigation, those necessities (showers, food, etc.) are indeed furnished to the inmates of Tamms supermax. Similarly, it cannot be said that the prison regime at Tamms C-Max, though harsh, is inflicted "maliciously and sadistically to cause harm." *Lunsford*, 17 F.3d at 1581. Accordingly, this case falls within the rule that, subject only to the Eighth Amendment, "a state can confine a prisoner as closely as it wants, in solitary confinement if it wants; a prisoner has no natural liberty to mingle with the general prison population." *Smith v. Shettle*, 946 F.2d 1250, 1252 (7th Cir. 1991). To the extent Kirkpatrick is alleging that Johnson and Godinez have been deliberately indifferent to Kirkpatrick's serious medical needs, this claim fails as well. As discussed, Kirkpatrick claims that he suffers from mental illness that requires him to be transferred away from Tamms C-Max. It is well settled, of course, that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). As the Seventh Circuit Court of Appeals has instructed, the Eighth Amendment "imposes upon prison officials the duty to 'provide humane conditions of confinement,' including the obligation to provide medical care to those whom [they] have] incarcerated." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (quoting *Farmer*, 511 U.S. at 832). A prisoner raising a claim against a prison official for deliberate indifference to the prisoner's serious medical needs must satisfy two requirements. The first requirement compels the prisoner to satisfy an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298

(1991)). Therefore, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id*. (quoting *Rhodes*, 452 U.S. at 347). The second requirement compels the prisoner to satisfy a subjective standard: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that amounts to "'deliberate indifference' to inmate health or safety[.]" *Id*. (quoting *Wilson*, 501 U.S. at 297). An objectively serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quotation omitted).

In this instance, Kirkpatrick does not allege that he has been diagnosed with mental illness, nor does he allege that Johnson or Godinez, both of whom are highly-placed IDOC officials, knew or had any reason to know of Kirkpatrick's mental condition. Perhaps most importantly, assuming that either Johnson or Godinez was aware that Kirkpatrick suffers from mental illness, as he claims, nothing in Kirkpatrick's complaint suggests that Johnson or Godinez, as medical laypeople, had reason to believe that Kirkpatrick was not receiving adequate medical care at Tamms C-Max for his condition. A prison official must reasonably respond to a prisoner's complaints, through the investigation and referral of a plaintiff's complaints, in order to be insulated from liability. *See Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006). However, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). "This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical

prison official liable in a case where a prisoner was under a physician's care would strain this division of labor." *Id*. "Prison administrators, having no medical expertise, must rely on health care professionals to assess the needs of prisoners and initiate treatment." *Williams v. Cearlock*, 993 F. Supp. 1192, 1197 (C.D. Ill. 1998) (holding that a prisoner's claim under 42 U.S.C. § 1983 that a prison provided defective medical care did not extend to a warden and an assistant warden, who did not have direct responsibility for the prisoner's medical care). "Because deliberate indifference requires actual knowledge of a serious risk of harm, [a plaintiff] may not sue the non-medical personnel who denied his grievances. Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals." *Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 920 (N.D. Ill. 2002) (dismissing deliberate indifference claims against a grievance officer, a warden, and two assistant wardens who had no reason to know that a prisoner's medical treatment was inadequate). Said differently, "[a] layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to provide a gratuitous rescue service." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Here Kirkpatrick does not allege that he has been diagnosed with mental illness, much less that Johnson and Godinez were aware of Kirkpatrick's mental illness and that the medical care Kirkpatrick received at Tamms C-Max for his mental illness has been so plainly inadequate as to be obvious to medical laypeople. Kirkpatrick cannot maintain a claim against Johnson and Godinez for deliberate indifference to his serious medical needs.[1] This case will be dismissed.

---

1. It also should be noted also that an injunction directing IDOC officials to transfer Kirkpatrick from Tamms C-Max to the Psychiatric Unit at Dixon is beyond the Court's authority to grant. *See Westefer*, 725 F. Supp. 2d at 788-89.

To conclude, pursuant to 28 U.S.C. § 1915A, this case is **DISMISSED with prejudice** as frivolous.  Kirkpatrick is advised that the dismissal of this case counts as one of his three allotted "strikes" under 28 U.S.C. § 1915(g).  The Clerk of Court is directed to enter judgment in accordance with this Order.

**IT IS SO ORDERED.**

DATED:  January 20, 2012

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge